[No. 39553.    Department One.    November 7, 1968.]

PAUL J. CLARK *et al., Appellants,* v. R. L. PARRISH *et al., Respondents.**

*Whitmore, Graham & Whitmore,* by *Robert E. Graham,* for appellants.

*Cullen, Campbell & Wightman* and *John F. Campbell,* for respondents.

RUMMEL, J.†—On the evening of January 21, 1966, a group of 30 or 40 teenage boys held a beer drinking party

*Reported in 447 P.2d 177.

†Judge Rummel is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

in a vacant house located east of Primary Highway No. 2 at a point about 5½ miles north of East Wenatchee. Here the highway was 20 feet 1 inch in width, surfaced with old concrete, and divided into two 10-foot lanes running generally north and south. Access to the house was over a dirt road about a block long.

Around 11:30 p.m., after the party commenced to break up and about half of the boys had left, respondent Stephen L. Crutcher discovered that the battery in his station wagon was dead. In order to start the vehicle, several of those present pushed it out onto the highway heading south. One Steve Witter took plaintiff-appellant Paul J. Clark's pickup truck from where it had been parked on the dirt road near the highway and placed it behind the station wagon. Because the pickup lacked a front bumper, it was headed north so the station wagon could be pushed by backing the pickup.

About this time an automobile owned by respondent Parrish and wife, and driven by respondent Diksen, rounded a curve about ½ mile to the north. Two other young men, including the son of the Parrishes, were in the car with Diksen. A state trooper, who arrived shortly after the accident which is the subject of this suit for damages, testified that the highway was covered with a light coating of snow. He said that snow also had been plowed off the highway so that there was a ridge of snow about 5 inches high on the east side with its edge 5 feet 3 inches from the concrete. Appellant Clark and a companion were standing together on the easterly side in the vicinity of the vehicles facing toward this ridge of snow, and urinating as the Parrish vehicle approached. Diksen, the driver, stated that when he had suddenly realized the headlights of the pickup facing him were in his lane of travel, he tried to go around on the left side, his car went into a spin and landed on the east side in a deep ditch. On its way it struck and injured Clark and killed his companion.

At the close of the appellant's case, the trial court dismissed the respondent Crutcher, driver of the station

wagon, on the theory that Clark had given the station wagon a push to start it off the dirt road into the highway. Thus, if Crutcher was guilty of negligence in placing his car on the highway, Clark was guilty of contributory negligence because he participated in the act. In connection with this, and by instruction No. 8A, the jury was told as follows:

> You are instructed that Paul J. Clark has been determined to have been negligent as a matter of law and that his negligence in assisting in pushing the disabled car on to the highway contributed to the accident here involved.

The jury returned a verdict for the remaining defendants.

Appellant assigns as error the giving of instruction No. 8A for the reason that there was conflicting testimony as to whether Clark in fact did assist in pushing the station wagon, and if he did there is no testimony that he actually helped place it where it was on the highway. With this we agree. There was conflicting testimony as to Clark's degree of intoxication at the time. He testified that he did not think he had given the vehicle a push, but that he might have given it a shove. When confronted with his deposition in which he said he gave it a shove, he then said that he must have done so. He stated he was 4 or 5 yards away from the highway. A witness, Eddie May, who was in the vicinity all the time, testified that he did not think Clark helped to push the station wagon out onto the highway. There is no testimony that after the station wagon started to roll Clark assisted in any way to position it on the highway. Although the boy driving Clark's pickup stated he did so with the appellant's consent, Clark, in effect, denied this. Because of these conflicting statements, the question of Clark's contributory negligence was for the jury. Obviously then instruction No. 8A was error requiring the granting of a new trial and the vacating of the order dismissing Crutcher from the case.

The posted speed limit in the area of the accident was 60 m.p.h., but the trooper testified that in his opinion the reasonable maximum speed under the conditions existing

at the time was 45 to 50 m.p.h. Frank A. Rawley, riding in the Parrish car, testified Diksen was driving 65 to 70 m.p.h. There was also testimony of a res gestae statement that the car was traveling at a speed of 80 m.p.h.

The court was correct in submitting to the jury the question of whether Diksen was guilty of wanton misconduct. If the jury found he was going at a speed which would be highly excessive under the circumstances, it could find he was guilty of wanton misconduct. However, the court went further than this and included the following paragraph in instruction No. 7:

> You are likewise instructed that one whose conduct is in wanton and reckless disregard of his own safety is barred from recovery against one whose wanton and reckless disregard of the claimant's safety is a contributory cause of the claimant's bodily harm.

Thus the question of whether Clark also was guilty of wanton misconduct became an issue. The jury had a right to consider whether Clark's conduct constituted contributory negligence, but we are of the opinion that it did not come within the definition of wanton misconduct. At 684 of the landmark case of *Adkisson v. Seattle*, 42 Wn.2d 676, 258 P.2d 461 (1953), this definition is stated in connection with a full discussion of willful and wanton misconduct:

> Wanton misconduct has been defined as: reckless disregard of what may be the probable consequences of an act calculated to cause injury, *Lacey v. Louisville & N. R. Co.*, 152 Fed. 134; the party doing the act or failing to act must be conscious of his conduct, and, without having the intent to injure, is conscious from his knowledge of existing conditions and circumstances that injury will likely or probably result from his conduct, and, with a reckless disregard of consequences, does some act or omits some duty that results in injury, . . . .

It was error to submit the question of wanton misconduct to the jury in relation to the actions of Clark.

Although there was testimony that Clark was standing off the pavement and near the snow bank, the Parrish son

stated that the two boys were standing on the left side of the left lane. This opened the door to giving the instructions relative to pedestrians crossing and being upon the highway. There was no error in this regard. If Clark was on the roadway, the jury might consider this fact in connection with a determination of whether he was contributorily negligent.

■ It was proper to instruct the jury in a general way in regard to intoxication and the standard of care to which an intoxicated person is held, but the court went further than this and instructed that under the statute it was unlawful for a person under 21 years of age to possess or consume intoxicating liquor. This instruction, coupled with the standard instruction that the violation of a statute is negligence as a matter of law, told the jury that they might consider if Clark illegally had liquor and might relate such illegality to negligence. This was error. This situation is analogous to those cases in which a driver has no driver's license. *Weihs v. Watson,* 32 Wn.2d 625, 203 P.2d 350 (1949) is in point. There it was held that whether a driver had a driver's license was immaterial upon the issue of failing to stop at a stop sign.

■ The court instructed on assumption of risk. We have already said that it was proper to submit the question of appellant's contributory negligence, if any, to the jury, but every case of contributory negligence does not warrant an instruction on assumption of risk. Whether the doctrine of assumption of risk is applied or that of volenti non fit injuria, similar or identical elements are involved. On the basis of the evidence presented, the proof failed to demonstrate a superior knowledge and appreciation on the part of the appellant of the danger and risk involved in being on or near the highway, or of a willful consent to the peril of respondent Diksen's inability to avoid an accident. *See Frasch v. Leedom,* 62 Wn.2d 410, 383 P.2d 307 (1963); *Rickert v. Geppert,* 64 Wn.2d 350, 391 P.2d 964 (1964); and *Martin v. Kidwiler,* 71 Wn.2d 47, 426 P.2d 489 (1967). It was error to instruct on assumption of risk.

The remaining assignments of error either raise relatively unimportant issues or have no merit.

Reversed and remanded for a new trial.

HILL, ROSELLINI, HALE, and McGOVERN, JJ., concur.